### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
#### Urbana Division

| | | |
|---|---|---|
| CHERYL L. KRUTSINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 08-2272 |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| sued as Michael J. Astrue, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Following remand for reconsideration, in February 2008, Administrative Law Judge (hereinafter "ALJ") Barbara Welsch denied social security benefits to Plaintiff Cheryl Krutsinger. The ALJ based her decision on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she was capable of performing a significant number of jobs available in the national economy.

In November 2008, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, Commissioner of Social Security, seeking review of the final decision by the Commissioner of the Social Security Administration denying social security benefits. In May 2009, Plaintiff filed a Motion for Summary Judgment (#20). In July 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#23). In August 2009, Plaintiff filed a Short Reply Brief (#25). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment **(#20)**.

## I. Background

### A. Procedural Background

Plaintiff applied for social security benefits in September 2001, alleging disability beginning March 19, 2001. The Social Security Administration denied her application initially and upon reconsideration. She appealed and ALJ Welsch held a hearing in October 2003 at

which Plaintiff and a vocational expert, Dr. Chrisann Schiro-Geist, testified. Plaintiff was represented by counsel at the hearing. In July 2004, the ALJ denied Plaintiff's application for social security benefits based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she was capable of performing a significant number of jobs that exist in the national economy. In December 2004, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently appealed the decision to this Court (05-2019). In February 2006, this Court recommended granting Plaintiff's Motion for Summary Judgment (05-2019, Report and Recommendation, #19.) In April 2006, the District Court adopted the Report and Recommendation (05-2019, Order, #20).

In May 2006, the Appeals Council remanded the case for reconsideration consistent with this Court's Report and Recommendation. The ALJ held another hearing in August 2007, at which Plaintiff and a different expert, Ronald Malik, appeared and testified. Plaintiff was represented by counsel at the second hearing. In February 2008, the ALJ again denied Plaintiff's application for social security benefits based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she was capable of performing a significant number of jobs that exist in the national economy. In September 2008, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently appealed the decision to this Court.

The parties have consented to the jurisdiction of a United States Magistrate Judge.

## B. Factual Background

The ALJ found that Plaintiff had a combination of impairments secondary to PCB exposure, and preexisting asthma, allergies/dermatitis, and chronic sinusitis that are considered severe. The ALJ observed that Plaintiff's preexisting problems with allergies/dermatitis, asthma, and chronic sinusitis did not previously prevent her from working, but noted that Plaintiff claims that her exposure to PCBs has exacerbated these conditions. Regarding the PCB exposure, Plaintiff has been diagnosed with numerous other impairments. The ALJ stated that the

objective medical evidence "fails to substantiate with credible evidence either the existence or the alleged severity of many of these impairments." (R. 376.)

Based on these impairments, the ALJ found that Plaintiff has the RFC to perform light and sedentary work except that she should not perform climbing, work at unprotected heights, or work in an environment that exposes her to a concentrated exposure to respiratory irritants, extreme heat or cold, wetness, humidity, or fumes; she must have access to nearby restroom facilities; and mentally "she is limited to jobs that are unskilled routine and repetitive in nature (due to all cognitive problems including short term memory problems and moderate problems with concentration, persistence and pace)." (R. 382.)

The ALJ and the parties provided detailed descriptions of the medical evidence and the Court will not repeat it here.

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether Plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court also defers to the ALJ's credibility findings. This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). Therefore, courts

uphold an ALJ's credibility finding as long as the record affords some support for the finding. *See Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992) (stating that courts give considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show that those findings are patently wrong).

## III. Discussion

Plaintiff argues that the ALJ's February 2008 decision contains the following errors: (1) The ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ erred by finding Plaintiff not credible; and (3) the ALJ erred at Step Five.

## A. RFC

Plaintiff first argues that the ALJ erred because she (1) focused on discrediting the treating doctors' opinions but failed to adequately explain how she actually arrived at the RFC, including failing to state what evidence she relied on; and (2) failed to evaluate how Plaintiff's combination of impairments affects her ability to sustain work. The Court notes that Plaintiff does not dispute the ALJ's conclusions regarding the weight to be given to the doctors' opinions.

### 1. Physical RFC

Regarding Plaintiff's physical RFC, Plaintiff contends that the ALJ erred by failing to adequately explain how she actually arrived at the RFC, in particular her findings that (1) Plaintiff has the RFC to walk and stand long enough to sustain light work, which requires standing and walking for up to six hours a day; and (2) Plaintiff could perform jobs that allowed moderate exposure to harsh chemical contaminants.

Regarding Plaintiff's ability to walk and stand long enough to sustain light work, the ALJ stated that Plaintiff did "not demonstrate with credible evidence (the claimant has the burden of proof on this issue) that she would be unable to engage in a limited range of . . . light and/or sedentary work." (R. 433.) The ALJ went on to state as follows:

> With regards to standing and walking the claimant has alleged she was very
> limited in these abilities, but Dr. Wasserberger's assessments would suggest an
> ability to stand and walk for three to four hours during an eight-hour workday; but
> he offers no credible medical evidence that she is limited in standing and walking.

(R. 433-34.)  The ALJ concluded that Plaintiff "has not provided credible evidence that she

would be unable to engage in standing or walking or walking for up to six hours in an eight-hour

workday as required for light work (usual breaks being every two hours)."  (R. 434.)


Regarding Plaintiff's respiratory condition, as Defendant points out, the ALJ stated that

she relied on "actual objective medical findings" (R. 433) to determine the RFC, rather than

relying on doctors' statements or on Plaintiff's statements.  The ALJ then described the basis for

her finding regarding exposure to respiratory irritants, stating as follows:

> [S]he has no more than mild to moderate respiratory problems and a sufficient
> limitation would be to no jobs that would require working in a concentrated
> exposure to respiratory irritants, extremes of cold, heat, wetness, humidity and
> fumes; keeping in mind the claimant smokes cigarettes and as a result frequently
> copes with concentrated amounts of respiratory irritants contained in cigarette
> smoke.

(R. 433.)  Although an ALJ cannot interpret objective findings, here, the test reports included

interpretation of the findings.  For example, the pulmonary function report dated March 2001

indicated "normal spirometry except for borderline low FEV1/FVC ratio suggestive of early

airway obstruction with normal lung volumes, diffusion capacity and marked increase of

resistance."  (R. 213.)  Similarly, the pulmonary function studies report dated October 2002

stated as follows:

> Overall findings including a component of mild to moderate small airways
> obstructive abnormality . . . .  The remainder of airways flow measurements are
> within satisfactory limits . . . .  Flow volume loop may show a component of mild
> restrictive abnormality . . . .  Diffusion appears to be moderately impaired . . . .
> Abnormalities of MEP, MIP and airways resistance profile as noted.

(R. 849-50.)  These summaries of the pulmonary function reports provide support for the ALJ's

conclusion that Plaintiff has no more than mild to moderate respiratory problems.  In addition,

the ALJ noted that the state agency medical consultants restricted the claimant to no

concentrated exposure to respiratory irritants.  (R. 435, citing R. 271.)  Based on this explanation, the Court cannot conclude that the ALJ erred in assessing Plaintiff's respiratory condition.

The Court disagrees that the ALJ failed to adequately explain how she arrived at the physical RFC.  After an exhaustive description of the evidence including a detailed explanation for her treatment of doctors' opinions, the ALJ devoted several pages to discussing Plaintiff's RFC.  (R. 433-36.)  Accordingly, the Court finds Plaintiff's argument unpersuasive.

## 2.  Mental RFC

Regarding Plaintiff's mental condition, Plaintiff contends that the ALJ erred by (1) ignoring the evidence of depression, (2) restricting Plaintiff to unskilled, routine, repetitive work, and as a result, failing to include in the RFC Plaintiff's limitations based on her cognitive impairments and depression; and (3) failing to state what evidence she relied upon in determining Plaintiff's mental RFC.

Plaintiff first contends that the ALJ ignored her depression.  The Court disagrees.  The ALJ noted that several of the doctors diagnosed depression and she acknowledged that Dr. Louis D'Elia based his diagnoses of severe anxiety and severe depression on psychological tests.  The ALJ indicated skepticism regarding those tests.  Nevertheless, the ALJ did not reject these diagnoses or ignore Plaintiff's depression.  Instead, she expressly stated that she considered depression and anxiety in the RFC but concluded that Plaintiff "is not limited beyond the restriction to routine and repetitive work due to possible moderate problems with concentration, persistence and pace."  (R. 380.)  She also stated that "the evidence supports only mild to moderate functional limitations secondary to depression.  Other than a restriction to unskilled routine and repetitive tasks, the claimant has not demonstrated with credible evidence that her depression imposes any restriction on her ability to work."  (R. 428-29.)  Finally, the ALJ stated that, even if Plaintiff's cognitive ability, depression, and anxiety are each considered severe, her work-related functional restrictions due to moderate problems with concentration, persistence,

and pace would limit her at most to unskilled, routine, repetitive work. (R. 411.) These statements show that the ALJ considered the evidence of Plaintiff's depression.

Plaintiff also raises the question of whether the ALJ's RFC and questions to the vocational expert (hereinafter "VE") adequately addressed all of Plaintiff's mental limitations. In support of this argument, Plaintiff cites *Craft v. Astrue*, 539 F.3d 668, 677-68 (7th Cir. 2008) (finding that the ALJ's limitation to simple, unskilled work did not adequately address a claimant's undisputed difficulty with concentration), and *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (finding that a hypothetical question that includes borderline intelligence does not account for deficiencies in concentration).

Seventh Circuit authority on this issue indicates that an ALJ may not translate a mental RFC limitation into words such as unskilled, simple, repetitive, routine, one- or two-step, or any similar characterization when describing a claimant's RFC or providing a hypothetical question to the VE, because these descriptions may not account for all the limitations a doctor meant to convey. *See Stewart v. Astrue*, 561 F.3d 679, 686 (7th Cir. 2009); *Craft*, 539 F.3d at 677-68; *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004); *Kasarsky*, 335 F.3d at 544.

Plaintiff stated in her memorandum that the ALJ's "amateur opinion as to mental RFC is erroneous as it fails to really account for Plaintiff's mental limitations." (#21, p. 13.) In addition, she referred to evidence that she had been diagnosed with both a cognitive disorder and a moderate to severe adjustment disorder with depressed and anxious mood. However, the fact that an individual has been diagnosed as having certain conditions is not enough by itself to establish an inability to work; the mere diagnosis of a mental impairment such as depression does not establish a claimant's disability claims. *See, e.g., Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir. 1991) (stating that the mere diagnosis of nervousness did not prove disability). A claimant must show that her impairment and its resulting symptoms are severe enough that she is precluded from engaging in substantial gainful activity. *Felver v. Barnhart*, 243 F. Supp. 2d 895, 903 (N.D. Ind. 2003) ("It is not enough for the Plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the Plaintiff from

engaging in substantial gainful activity."); 42 U.S.C. §§ 416(i), 423(d)(3).  Here, Plaintiff has not presented any evidence about what particular limitations she experiences as a result of her depression and cognitive impairments that the ALJ did not take into account in her RFC and questions to the VE.

Regarding Plaintiff's mental condition, the RFC limited her to "jobs which are unskilled routine and repetitive in nature (due to all cognitive problems including short term memory problems and moderate problems with concentration, persistence and pace)."  (R. 382.) Furthermore, at the hearing, the ALJ explained to the VE at one point that her use of the phrase "routine repetitive jobs" assumes that the individual has "up to moderate problems with concentration but not greater."  (R.939.)  The VE confirmed that this was his understanding also.

In light of the facts that the ALJ's RFC referred to Plaintiff's cognitive problems including short-term memory problems and moderate problems with concentration, persistence, and pace, and that she explained at the hearing what she meant by using the phrase "routine repetitive jobs," the Court cannot conclude that the RFC and the hypothetical questions to the VE did not take into account Plaintiff's mental limitations.  Where reasonable minds can differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision.  *Books*, 91 F.3d at 977-78.

Finally, as noted above in the section on Plaintiff's physical RFC, the Court disagrees that the ALJ did not explain what evidence she relied on in determining Plaintiff's mental RFC.

### 3.  Combination of Impairments

Plaintiff also argues that the ALJ failed to "evaluate how Plaintiff's combination of impairments affect[s] her ability to sustain work."  (#21, p. 12.)  Beyond making this statement, she did not develop this argument or refer to any medical evidence to support it.  In the absence of any further discussion by Plaintiff, the Court finds this argument unpersuasive.

## B. Credibility

Plaintiff next argues that the ALJ improperly assessed Plaintiff's credibility because (1) the ALJ failed to consider Plaintiff's medications; (2) the ALJ's assessment was result-oriented and ignored Plaintiff's statements regarding her fatigue and other symptoms; (3) the ALJ improperly considered Plaintiff's ability to perform intermittent activities when assessing credibility; and (4) the ALJ did not mention Dr. D'Elia's assessment of validity and motivation when assessing Plaintiff's credibility.

Plaintiff first contends that the ALJ violated SSR 96-7p by failing to consider Plaintiff's medications. Plaintiff supported this argument by listing the medications that she was taking at the time of the 2007 hearing, however, she did not develop the argument by presenting evidence regarding the impact of those medications, nor did she refer to any evidence that she experienced side effects as a result of the medications. In her reply brief, Plaintiff refers to side effects that are frequently associated with her medications. (#25, p. 4, n.2.) The decision shows that the ALJ did, in fact, consider Plaintiff's medications. (*See* R. 383-84, 391-92, 401.) In the absence of evidence regarding how her medications affected Plaintiff specifically, the Court cannot conclude that the ALJ erred by failing to adequately consider the effects of Plaintiff's medications.

Plaintiff also argues that the ALJ's credibility finding ignores Plaintiff's statements about her fatigue and other symptoms. A plaintiff's own statements do not help bolster the argument that the ALJ erred when assessing the credibility of those statements.

Plaintiff's third argument is that the ALJ erred by rejecting Plaintiff's credibility based on her ability to perform intermittent activities. Plaintiff notes that intermittent activities are not the same as the ability to work and Plaintiff's activities do not undermine her treating doctor's statements regarding her limitations. In support, Plaintiff cites *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005), in which the Seventh Circuit court held that the ALJ erred by failing to consider the difference between an ability to participate in sporadic physical activities and the ability to work in a regular work week.

An ALJ is required to consider a claimant's activities of daily living when assessing credibility. 20 C.F.R. § 404.1529(c). An ALJ commits error when she relies solely on an individual's ability to engage in sporadic physical activities to determine that the individual can work eight hours a day, five days a week. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). Here, the ALJ did not do that. The decision shows that she considered the medical evidence in making her decision.

The Seventh Circuit has outlined an extremely deferential standard of review regarding credibility; a court will reverse the ALJ's findings on credibility only when they are patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). A court should conclude that a credibility determination is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

> Regarding credibility, the ALJ summarized her findings as follows:
>
> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. The lack of credible evidence to support the degree of limitation the claimant alleges is a primary reason for finding the claimant not credible; the medical evidence does not demonstrate more than mild to moderate impairments and the claimant can and does sit, stand, walk, lift light items, concentrate to complete tasks and otherwise perform work-like tasks, indicating she can perform all these functions and that her rationale for not working is that she can not sustain these activities; but she has not presented credible evidence she would be unable to perform a full-time job within the determined residual functional capacity. Her subjective self-serving statements regarding her degree of limitation are not supported by the record as a whole as discussed below.

(R. 385-86.) The ALJ supported this statement with reference to the record and to inconsistencies in the doctors' reports and Plaintiff's statements. Thus, she has satisfied the Seventh Circuit court's requirement that the ALJ explain her reasoning. The Court has reviewed the record and concludes that the ALJ's reasoning is not patently wrong. Accordingly, the Court cannot conclude that the ALJ erred when assessing Plaintiff's credibility.

In her reply brief, Plaintiff also mentioned that the ALJ ignored important evidence from Dr. D'Elia; specifically, Dr. D'Elia opined that Plaintiff was not "exaggerating or otherwise amplifying her cognitive symptom presentation. She is not malingering." (R. 290.) Plaintiff contends that this opinion is particularly important because the ALJ stated that she discounted the adjustment disorder findings because the diagnosis depended to some degree on self-reports and she found Plaintiff not credible. Plaintiff contends that the ALJ erred by ignoring this line of evidence that supports her case. *See Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984).

The ALJ is responsible for determining credibility. *Knight v. Chater,* 55 F.3d 309, 314 (7th Cir. 1995). The ALJ cannot reject entire lines of evidence and discuss only those that support her conclusion. 20 C.F.R. § 404.1529(c)(3); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). However, the ALJ need not discuss every piece of evidence in her decision. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). Here, Dr. D'Elia's statement related specifically to Plaintiff's presentation of her cognitive impairments. The Court cannot conclude that the ALJ's failure to mention this particular statement constitutes patent error.

## C. The ALJ's Step Five Finding

Plaintiff argues that the ALJ's Step Five finding was erroneous because (1) the ALJ's RFC was incomplete; therefore, her hypothetical questions to the VE were inadequate; and (2) the VE's testimony was inconsistent with Social Security Regulations because it contemplated part-time work.

As noted above, because the ALJ's RFC referred to Plaintiff's cognitive problems including short-term memory problems and moderate problems with concentration, persistence, and pace. She explained at the hearing what she meant by using the phrase "routine repetitive jobs," the Court cannot conclude that the hypothetical questions to the VE were inadequate. Furthermore, Plaintiff concedes that the ALJ made it clear that she reduced the number of available jobs by the part-time jobs; therefore, her second argument is unpersuasive.

### IV.  Summary

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment **(#20)**.

ENTER this 23rd day of April, 2010.

_____s/ DAVID G. BERNTHAL_____
U.S. MAGISTRATE JUDGE